# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **EDGARDO SEDA-ARROYO,**<br><br>Petitioner,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Respondent. | **Civil No. 14-1567 (ADC)**<br>[Related to Crim. No. 10-173 (ADC)] |

## OPINION AND ORDER

By a Judgment, dated September 14, 2011, petitioner Edgardo Seda-Arroyo was convicted before this Court and Judge, by plea of guilty under docket number 10-CR-173, of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Pursuant to 18 U.S.C. § 924(a)(2), that offense carries a maximum legally authorized term of imprisonment of ten years. The Court sentenced petitioner to ten years in federal prison, and petitioner remains incarcerated.

Petitioner then appealed his judgment of conviction to the First Circuit Court of Appeals, where the only challenge he raised was whether his upwardly variant sentence is procedurally and substantively unreasonable. By a Judgment, dated September 5, 2013, the Court of Appeals affirmed the sentence, finding "that the imposition of the statutorily maximum sentence in this case was not unreasonable" and "that, although the sentencing court in its decision to impose a sentence above the guideline range relied on factors already included in the calculation of the

guideline range, it adequately explained in each case how [petitioner's] situation was different from the ordinary situation covered by the guideline calculation."[1] On November 18, 2013, the United States Supreme Court denied petitioner's writ of certiorari.

On or about July 18, 2014, petitioner timely moved the Court pro-se for relief pursuant to 28 U.S.C. § 2255(a).[2] **ECF No. 1**. Petitioner raises eleven grounds of relief, which, however, may be grouped into a smaller number of claims. First, petitioner argues that his sentence is invalid and his counsel was ineffective because, he claims, his sentence violates *Alleyne* v. *United States*, 133 S. Ct. 2151 (2013), and *Descamps* v. *United States*, 133 S. Ct. 2276 (2013), and his lawyer failed to convince the courts of it.[3] Second, petitioner attacks his sentence and counsel's performance, alleging that he did not know that, upon pleading guilty, the Court could sentence him to the statutorily maximum sentence.[4] Third, and finally, petitioner complains that his counsel failed him as well by not filing motions that would have shown, that he was mentally incompetent, that an arrest warrant was defective, that the police did not find the firearms in his apartment as they had claimed, and that the specific gun charged in the Indictment was not a firearm for purposes of 18 U.S.C. § 922(g)(1) because it was inoperative at the time.[5] Those claims are unavailing.

---

[1] This Court is bound by that decision and those findings and, thus, will not entertain any attempt by petitioner to relitigate them. See *Watchtower Bible* v. *Municipality of San Juan*, 773 F.3d 1, 10 (1st Cir. 2014).

[2] "We are required to construe liberally a pro se [filing]," but "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed* v. *Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

[3] See Grounds One, Two, and Three of petitioner's motion, **ECF No. 1**, at 4–7.

[4] See Grounds Four and Nine of petitioner's motion, **ECF No. 1**, at 8–9, 16.

[5] See Grounds Five, Six, Seven, Eight, Ten, and Eleven of petitioner's motion, **ECF No. 1**, at 11–17.

Petitioner's claims based on *Alleyne and Descamps* are non-starters because his sentence did not implicate the rules established by either case. The statutory sentencing range to which he was exposed, with its maximum term of ten years in prison, followed directly from his guilty plea to 18 U.S.C. § 922(g)(1). See 18 U.S.C. § 924(a)(2) ("Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be . . . imprisoned not more than 10 years."). Thus, Alleyne is not implicated here. *United States* v. *González*, 857 F.3d 46, 61 (1st Cir. 2017) ("*Alleyne* and Apprendi do not require sentencing facts that do not change the statutory sentencing range to be found beyond a reasonable doubt."). Indeed, petitioner's true complaint is that he was sentenced to a maximum term of imprisonment based "on the judge's own fact-finding by a preponderance of the evidence." **ECF No. 1-2**, at 3. There is nothing problematic with that practice, however, and "Alleyne itself rejected the very argument [petitioner] floats here: 'broad sentencing discretion, informed by judicial factfinding,' the Court stressed, 'does not violate the Sixth Amendment.'" *González*, 857 F.3d at 59 (quoting *Alleyne*, 133 S. Ct. at 2163). Meanwhile, petitioner does not cite *Descamps* for its well-known discussion of the categorical approach, but for the proposition that "a court may not find facts . . . when such findings increase the statutory maximum." **ECF No. 1-2**, at 2. Accordingly, his claims based on *Descamps* fail for the same reason as those based on *Alleyne*. Plaintiff, thus, fails to show any error in his sentence or ineffectiveness in his counsel.

Next, petitioner's claims based on the allegation that, in pleading guilty, he did not know that the Court could sentence him to the maximum legally authorized sentence are contradicted completely by his declarations, under oath, at his Rule 11 colloquy. See *Hernández-Hernández* v.

*United States*, 904 F.3d 758, 762 (1st Cir. 1990) (finding "that statements made by an accused in a change of plea proceeding are accorded a presumption of truthfulness, which is not overcome in the absence of 'credible, valid reasons why a departure from those earlier contradictory statements is now justified.'") (quoting *United States* v. *Butt*, 731 F.3d 75, 80 (1st Cir. 1984)). In his plea colloquy, petitioner averred that he understood that the statutorily maximum sentence for his charged offense is ten years in prison, that his sentence would be left to the discretion of the Court, that the Court could impose upon him the maximum statutory penalty, and that (once entered) he would not be allowed to withdraw his guilty plea simply because he disagreed with his sentence. Transcript of Change of Plea Hearing at 14, 17–18, *United States* v. *Seda Arroyo*, No. 10-CR-173-1 (D.P.R. Dec. 5, 2011), **ECF No. 89** (hereinafter, "Transcript"). These statements carry weight because a "defendant is normally bound by the representations that he himself makes in open court at the time of his plea." *United States* v. *Gates*, 709 F.3d 58, 69 (1st Cir. 2013).

The Court finds that petitioner has failed to rebut the presumption of truthfulness that his earlier Rule 11 statements enjoy. After all, petitioner has not provided the Court with a good reason to ignore them. See **ECF Nos 1**, at 8, 16; **1-2**, at 12–14, 20–21; see also *Gates*, 709 F.3d at 70 (finding that Rule 11 statements "are more likely to be reliable than later versions prompted by second thoughts.") (quoting *United States* v. *Padilla-Galarza*, 351 F.3d 594, 598 (1st Cir. 2003)). At most, petitioner tries to scuttle his Rule 11 statements by claiming, incoherently, that the mental evaluation by Dr. María Margarida, whom he acknowledges "found [him] to be competent to stand trial," see **ECF No. 1-2**, at 20, actually found him incompetent because of, he maintains,

his alleged "Global Intellectual functioning within the Borderline to low average range" and his "Verbal IQ . . . in a similar mild impaired range," which, he asserts, "means that his ability to . . . anticipate the consequences of his actions is significantly limited." **ECF No. 1**, at 16. Petitioner, however, concedes that, in sentencing him, the Court "was aware of th[ose] mental issues," such as they were.[6] **ECF No. 1-2**, at 20. If the self-contradictory character of that claim is not enough to warrant its denial, petitioner's position is, yet again, critically undercut not only by his Rule 11 affirmations about his competence, but by his own lawyer's affirmations and also the Court's specific finding of competence based on its direct observation of, and conversations with him. See Transcript at 3–7. Accordingly, the record contradicts petitioner's claims about his alleged lack of knowledge and incompetence when pleading guilty.[7] See *United States* v. *McGill*, 11 F.3d 223, 226 (1st Cir. 1993) (holding that "a '§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.'") (quoting *Shraiar* v. *United States*, 736 F.2d 817, 818 (1st Cir. 1984)).

---

[6] As the United States rightly observes, the Court, in sentencing petitioner, found that although he may have some mental limitations, he was conscious of his actions, competent, and sane. See **ECF No. 5**, at 7.

[7] Appended to petitioner's motion to reconsider the order denying his motion for an extension of time to reply to the Government's opposition to his Section 2255 motion, see **ECF No. 13**, is a writing that sets forth two additional, albeit contradictory, grounds of relief. On the one hand, petitioner states that he thought he was pleading guilty pursuant to an agreement that guaranteed him a guidelines sentence, as opposed to the straight plea he actually entered, See **ECF No. 13-5**, at 1–3, Petitioner's claim is contradicted by his Rule 11 colloquy statements in which he affirms that he understands that the Court will have the discretion to sentence him up to the statutory maximum. On the other hand, petitioner states that the Government violated his plea agreement—the very agreement he had just admitted he did not actually enter. See *id.*, at 3–7. Petitioner also appended to his motion to reconsider eighteen pages of supplemental argumentation in support of his Section 2255 motion. See **ECF No. 13-3**. The Court has considered and rejected those arguments.

At times, petitioner recapitulates the above claims about his lack of knowledge regarding the Court's sentencing discretion by blaming the (it turned out) erroneous predictions of his lawyer. For example, petitioner complains that "[c]ounsel kept telling him that [pleading guilty] was a 'sweet deal/a good deal' and most likely he would not get more than 60 months in prison." **ECF No. 1-2**, at 13. But, as noted above, petitioner affirmed, when pleading guilty, that he knew that he might receive instead the maximum prison sentence of ten years. Moreover, "[a]n attorney's inaccurate prediction of his client's probable sentence," as petitioner alleges occurred here, "will not satisfy the prejudice prong of the ineffective assistance test." *Moreno-Espada* v. *United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *United States* v. *LaBonte*, 70 F.3d 1396, 1413 (1st Cir. 1995), *rev'd on other grounds*, 520 U.S. 751 (1997)); see also *Knight* v. *United States*, 37 F.3d 769, 775 (1st Cir. 1994) (citing cases). At other times, petitioner states a variation of his claim about his alleged incompetence, but instead of arguing incoherently that the doctor who deemed him competent actually found him incompetent to stand trial, he argues that his guilty plea is invalid because, if he had gone to trial, he would have been "acquitted" based on an insanity defense. **ECF No. 1-2**, at 13. But, "by waiving the right to a trial through a guilty plea," petitioner "waive[d] all nonjurisdictional defenses," including insanity. *United States* v. *González-Arimont*, 268 F.3d 8, 12 (1st Cir. 2001). Accordingly, none of these variations on his claims warrant relief, either.[8]

---

[8] At this stage, one may wonder whether petitioner has procedurally defaulted any of these claims by failing to raise them before either this Court during his criminal proceedings, or the Court of Appeals on direct review. However, the United States has waived the defense of procedural default by neglecting to raise it in

Finally, petitioner's claims based on his counsel's alleged failure to file various motions and conduct an investigation into certain matters do not show ineffective assistance. The Court will consider each claim individually.

To succeed on a claim that counsel was constitutionally ineffective, "[p]etitioner must first show that his counsel's 'performance was deficient,' and he must then show that 'the deficient performance prejudiced the defense.'" *Williams* v. *United States*, 858 F.3d 708, 715 (1st Cir. 2017) (quoting *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984)). "The first requirement necessitates a demonstration that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment,' and in reviewing such an allegation, we must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id*. (some internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 687; then quoting *Woods* v. *Donald*, 135 S. Ct. 1372, 1375 (2015)). The prejudice requirement, meanwhile, necessitates a demonstration of "a 'reasonable probability that, but for counsel's unprofessional errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial.'" *Lee* v. *United States*, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill* v. *Lockhart*, 474 U.S. 52, 59 (1985)). Petitioner "must also show that he would have been better off going to trial." *Id*.

---

their opposition to petitioner's Section 2255 motion. See **ECF No. 5**; see also *Sotirion* v. *United States*, 617 F.3d 27, 32 (1st Cir. 2010) (citing *Barreto-Barreto* v. *United States*, 551 F.3d 95, 98 (1st Cir. 2008)).

Petitioner's claims here are plainly meritless because he fails to show that his counsel was incompetent for failing to file each motion and also because his allegations of prejudice—which do not even attempt to establish that he would have gone to trial had counsel filed the motions or that he would have been better off at trial—are wholly speculative.

For example, petitioner complains that his counsel did not move the Court to dismiss the Indictment, suppress his firearms, or request a Franks hearing after "discovery photographs," provided by the Government, allegedly showed that his firearms "were not found inside [his] apartment as stated by [a police officer's affidavit]" subsequent to his arrest. **ECF No. 1-2**, at 17. But the Court cannot fault counsel for not making those motions when the Court itself is unable to divine any basis for dismissal, suppression, or a Franks hearing based on what those photos allegedly prove—again, that a police affidavit misstated where petitioner's firearms were found. *Vieux* v. *Pepe*, 184 F.3d 59, 64 (1st Cir. 1999) ("Counsel is not required to waste the court's time with futile or frivolous motions.") (quoting *United States* v. *Wright*, 573 F.2d 681, 684 (1st Cir. 1978)). Even if the Court assumed that the affidavit contains an error about where petitioner's guns were found, it is not only speculative, but wrong, to assume, as petitioner does, that every misstatement in an affidavit amounts to "perjury." See **ECF No. 1**, at 15; see also *United States* v. *Marshall*, 109 F.3d 94, 99 (1st Cir. 1997) (finding that an officer's factual error about where the defendant's drugs had been found was "an instance of confusion or mistake," not "perjury.").

In any event, petitioner's assertion about what the photos show (or what the Court might find they show) is itself speculative because photos do not come with unassailable certifications

of their contents, but are always open to interpretation, especially if the issue is the nature of the activity (say, *finding* guns vs. *displaying* them) depicted therein. See Blow-Up (Metro-Goldwyn-Mayer 1966); see generally *Stanton* v. *Metro Corp.*, 438 F.3d 119, 124–32 (1st Cir. 2006) (wrestling with how the contents of a photograph are subject to competing interpretations). And petitioner does not even acknowledge the fact that, even if his interpretation of the photograph proves to be a reasonable one, multiple people can testify (as the government's proffer of evidence shows) to having found his guns in his apartment. See **ECF No. 5**, at 17. Further, as indicated above, petitioner fails to explain why any part of the case against him turned on where the Government found the firearms. Accordingly, the Court finds that petitioner has failed to prove either prong of his ineffective-assistance claim.

Next, petitioner bemoans that counsel did not ask for a Court-ordered mental evaluation to determine whether he was "competent or sane" during his gun possession. **ECF No. 1**, at 15. Petitioner acknowledges, however, that counsel provided him with a non-Court-ordered mental evaluation, by the aforementioned clinical psychologist, Dr. Margarida, who found that petitioner was "competent to stand trial." *Id*. Petitioner then claims that Dr. Margarida's report "clearly demonstrate[d] that [he] could never have been sane or competent at the time of the . . . offense." *Id*. It, thus, appears that petitioner received—thanks to his counsel, no less—precisely the type of mental-evaluation report that he wanted to receive—namely, one allegedly showing that he was insane during the commission of the offense. Accordingly, the Court does not see any possible prejudice here. Moreover, if petitioner believes that he now warrants relief because

of this alleged insanity defense, the Court reminds him that, by pleading guilty, as the record shows he validly chose to do, he "waive[d] all nonjurisdictional defenses." *González-Arimont*, 268 F.3d at 12.

Next, petitioner criticizes his counsel for not moving to dismiss the Indictment based on a forensic report that allegedly reflects that the firearm charged in the Indictment, a Walther PPK/S, was non-operational. **ECF No. 1**, at 17. However, to be a "firearm" within the meaning of 18 U.S.C. § 921(a)(3), which is the section that defines the term for purposes of 18 U.S.C. § 922(g)(1), the gun "need not be prove[d] to be loaded or operable," but must only "be 'real,' rather than a toy or replica." *United States* v. *Martínez-Armestica*, 846 F.3d 436, 440 (1st Cir. 2017) (brackets in original) (quoting *United States* v. *Taylor*, 54 F.3d 967, 975 (1st Cir. 1995)). Once again, the Court cannot fault counsel for failing to file a frivolous argument or motion. See *Vieux*, 184 F.3d at 64.

Next, petitioner chastises his counsel for failing to move to dismiss the Indictment on the ground that he was innocent of the unrelated fugitive-from-justice charge that formed the basis of the arrest warrant that federal agents were executing when they became aware of petitioner's illegal gun possession. In particular, petitioner believes that the unrelated charge led to federal jurisdiction over his gun crime. **ECF No. 1**, at 11. But the Court did not acquire jurisdiction over this case because petitioner was suspected of having committed another offense, but because he was accused of violating a federal statute, 18 U.S.C. § 922(g)(1). In any event, even if petitioner was innocent of the crime underlying the warrant, that does not mean there was a defect in the

warrant because its affiant's beliefs about petitioner may have been "objectively reasonable" at the time, but "mistaken" in the end. See *Lallemand* v. *Univ. of R.I.*, 9 F.3d 214, 215 (1st Cir. 1993).

Petitioner then faults his attorney for not moving the Court for a Franks hearing upon his offer "to provide a sworn affidavit of his own [facts] to counter the government's version of the facts" as narrated in the arrest-warrant affidavit. **ECF No. 1**, at 12. In particular, petitioner wanted to deny that he had shot and killed Eduardo González-Camp on May 3, 2007, and that he had since gone to Orlando, Florida. *Id*. However, as counsel likely knew, a defendant cannot "overcome the presumption of validity that surrounds an affidavit in support of [an arrest] warrant and obtain [a Franks] hearing" unless "he 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *United States* v. *Moon*, 802 F.3d 135, 149 (1st Cir. 2015) (quoting *Franks* v. *Delaware*, 438 U.S. 154, 155-56 (1978)). And, it is settled law that a defendant's denial, even in an affidavit of his own, of the facts recounted in a warrant affidavit "constitutes no more than a conclusory and unsupported allegation that falls well short of the 'substantial preliminary showing' necessary to justify a Franks hearing." *Id*. (citing *United States* v. *Southard*, 700 F.2d 1, 10 (1st Cir. 1983)). Such denials by the defendant only "set up a swearing contest" and "do not demonstrate a substantial possibility of affiant perjury." *Southard*, 700 F.2d at 10.

Indeed, at no point does petitioner explain why any misstatements of fact in the warrant affidavit were anything more than the result of "negligence or innocent mistake," both of which

are "insufficient" grounds for the suppression of evidence under Franks. See *Hernández-Cuevas* v. *Taylor*, 723 F.3d 91, 102 (1st Cir. 2013) (quoting *Franks*, 438 U.S. at 171). In any event, petitioner concedes that the arrest warrant did not do any work in this case because, according to him, he voluntarily surrendered to the federal agents in a public, outdoor part of his apartment complex. See **ECF No. 1**, at 13. Moreover, petitioner does not deny the allegation in the warrant affidavit that, at the time, there was an active warrant for his arrest for the above-mentioned shooting of González-Camp. See Affidavit at ¶¶ 4–5, *United States* v. *Seda Arroyo*, No. 10-CR-173-1 (D.P.R. Apr. 24, 2008, **ECF No. 1-2**; see generally *Utah* v. *Strieff*, 136 S. Ct. 2056, 2062–63 (2016). Thus, counsel cannot be faulted for not moving for a Franks hearing. See *Vieux*, 184 F.3d at 64.

Finally, petitioner levies a charge of cumulative error against his counsel, see **ECF No. 1**, at 16, but "[a]bsent any particularized error, there can be no cumulative error." *United States* v. *Candelario-Santana*, 834 F.3d 8, 26 (1st Cir. 2017) (alteration in original) (quoting *Williams* v. *Drake*, 146 F.3d 44, 49 (1st Cir. 1998)). And, as found above, petitioner has failed to show any error in his plea, sentence, or assistance of counsel.[9]

In sum, the Court hereby **DENIES** petitioner's motion for relief under 28 U.S.C. § 2255(a). See **ECF No. 1**; see also *McGill*, 11 F.3d at 226. For the reasons set forth in footnote 7 above, the Court also **DENIES** the motion at **ECF No. 22**. The Clerk shall enter judgment accordingly.

---

[9] Littered throughout petitioner's filings in this proceeding are several other arguments, often minor, in support of his Section 2255 motion. Insofar as he has not waived the arguments for lack of development, see *United States* v. *Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), the Court has considered and rejected them as well.

When entering a final order that is adverse to a Section 2255 petitioner, the Court must determine whether he warrants a certificate of appealability. The Court may issue a certificate only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also *Buck* v. *Davis*, 137 S. Ct. 759, 773 (2017). Petitioner made no such showing here, however. Thus, the Court will not issue him a certificate. He may still seek one directly from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22(b)(1).

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2017.

**S/AIDA M. DELGADO-COLÓN**
**Chief United States District Judge**